**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Nicholas Steven Johnson, | No. CV-19-00286-PHX-SMB |
| Plaintiff, | **ORDER** |
| v. | |
| Commissioner of Social Security Administration, | |
| Defendant. | |

At issue is the denial of Plaintiff Nicholas Johnson's Application for Supplemental Security Income benefits by the Social Security Administration (SSA) under the Social Security Act ("the Act"). Plaintiff filed a Complaint (Doc. 1) with this Court seeking judicial review of that denial, and the Court now addresses Plaintiff's Opening Brief (Doc. 11, "Pl. Br."), Defendant SSA Commissioner's Answering Brief (Doc. 16, "Def. Br."), and Plaintiff's Reply (Doc. 17, "Reply"). The Court has reviewed the briefs and Administrative Record (Doc. 9, "R."), and now affirms the Administrative Law Judge's ("ALJ") decision, (R. at 26–57).

## I.   BACKGROUND

On October 2, 2014, a protective application for Supplemental Security Income benefits was filed on Plaintiff's behalf, who was then a child under 18. (*Id*. at 29.) Plaintiff turned 18, on October 5, 2014. (*Id*. at 34.) Plaintiff's claim was denied initially on April 14, 2015, and on reconsideration on September 15, 2015. (*Id*.) Plaintiff appeared before the ALJ for a hearing on his claim on August 16, 2017. (*Id*.) On February 6, 2018, the ALJ

1    denied Plaintiff's claim. (*Id.* at 49.) On November 21, 2018, the Appeals Council denied

2    Plaintiff's Request for Review of the ALJ's decision. (*Id.* at 1–7.)

3        The Court has reviewed the medical evidence and will discuss the pertinent

4    evidence in addressing the issues raised by the parties. Upon considering the medical

5    evidence and opinions, the ALJ evaluated Plaintiff's disability based on the following

6    severe impairments: autism and a speech impairment. (*Id.* at 20.)

7        Ultimately, the ALJ evaluated the medical evidence and testimony and concluded

8    that Plaintiff was not disabled before age 18, or after. (*Id.* at 41, 49.) In doing so, the ALJ

9    performed two separate but related inquiries. First, the ALJ found that Plaintiff "did not

10   have an impairment or combination of impairments that met, medically equaled any listing

11   or functionally equaled the listings [in 20 CFR Part 404, Subpart P, Appendix 1, Part A or

12   B], [so Plaintiff] was not disabled prior to attaining age 18." (*Id.* at 41.) Next, the ALJ

13   performed the typical five-step inquiry for determining whether Plaintiff was disabled after

14   age 18. (*Id.*) First, the ALJ found that Plaintiff "has not had an impairment or combination

15   of impairments that meets or medically equals a listed impairment." (*Id.* at 41.) The ALJ

16   then calculated Plaintiff's residual functional capacity ("RFC"), finding, "[Plaintiff] has

17   had the [RFC] to perform a full range of work at all exertional levels but with the following

18   nonexertional limitations: [Plaintiff] would be limited to occupations not performed in a

19   fast-paced production environment, involving only simple work related decisions, and

20   relatively few work place changes, and which require no more than occasional interaction

21   with the public." (*Id.* at 43.) Based on Plaintiff's RFC, the ALJ found that, "[s]ince attaining

22   age 18 . . . jobs have existed in significant numbers in the national economy that [Plaintiff]

23   has been able to perform." (*Id.* at 48.)

24   ## II.   LEGAL STANDARDS

25       In determining whether to reverse an ALJ's decision, the district court reviews only

26   those issues raised by the party challenging the decision. *See Lewis v. Apfel*, 236 F.3d 503,

27   517 n.13 (9th Cir. 2001). The Court may set aside the Commissioner's disability

28   determination only if it is not supported by substantial evidence or is based on legal error.

*Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a whole. *Id.* To determine whether substantial evidence supports a decision, the Court must consider the record as a whole and may not affirm simply by isolating a "specific quantum of supporting evidence." *Id.* Generally, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citations omitted).

To determine whether a claimant is disabled for purposes of the Act, the ALJ typically follows a five-step process. 20 C.F.R. § 404.1520(a). The claimant bears the burden of proof on the first four steps, but the burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). At the first step, the ALJ determines whether the claimant is presently engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. 20 C.F.R. § 404.1520(a)(4)(ii). At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. 20 C.F.R. § 404.1520(a)(4)(iii). If so, the claimant is automatically found to be disabled. *Id.* At step four, the ALJ assesses the claimant's RFC and determines whether the claimant is still capable of performing past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If not, the ALJ proceeds to the fifth and final step, where she determines whether the claimant can perform any other work in the national economy based on the claimant's RFC, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v). If not, the claimant is disabled. *Id.*

The analysis changes for claimants under the age of 18. To determine whether a claimant under the age of 18 is disabled for purposes of the Act, the ALJ follows a three-step process. 20 C.F.R. § 416.924(a). At the first step, the ALJ determines whether the claimant is presently engaging in substantial gainful activity. 20 C.F.R. § 416.924(b). At

step two, the ALJ determines whether the claimant has a medically determinable physical or mental impairment that is "severe" or a combination of impairments that is "severe." 20 C.F.R. § 416.924(c). At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets, medically equals, or functionally equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. 20 C.F.R. § 416.924(d). If so, and the impairment has lasted or is expected to last for a continuous period of at least 12 months, the claimant is automatically found to be disabled. *Id.*

To determine whether the claimant's impairment or combination of impairments functionally equals a listed impairment, the ALJ assesses the claimant's functioning in terms of six domains: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for oneself; and (6) health and physical well-being. 20 C.F.R. § 416.926a(d). To functionally equal a listed impairment, the claimant's impairment or combination of impairments must result in at least a "marked" limitation in two domains or an "extreme" limitation in one domain. *Id.* A claimant has a "marked" limitation when the claimant's impairment or combination of impairments "interferes seriously" with his ability to independently initiate, sustain, or complete activities. 20 C.F.R. § 416.926a(e). A claimant has an "extreme" limitation when the claimant's impairment or combination of impairments "interferes very seriously" with his ability to independently initiate, sustain, or complete activities. *Id.*

## III.   ANALYSIS

Plaintiff challenges the ALJ's nondisability determination with three primary arguments. First, Plaintiff argues the ALJ erred in rejecting the opinions of Plaintiff's treating physician, Dr. Michael Perlstein. (Pl. Br. at 14–19.) Second, Plaintiff argues the ALJ erroneously rejected his symptom testimony. (*Id.* at 19–23.) Third, Plaintiff argues the ALJ misinterpreted the limitations assessed by vocational evaluation specialist, Joseph Burridge, and erroneously concluded that Burridge's assessed limitations support the

1    ALJ's nondisability determination. (*Id*. at 23–25.)

2         For the reasons that follow, the Court rejects Plaintiff's arguments and finds that

3    substantial evidence supports the ALJ's nondisability determination.[1] First, the ALJ

4    provided specific and legitimate reasons supported by substantial evidence for discounting

5    Dr. Perlstein's opinions. Second, the ALJ appropriately discounted Plaintiff's symptom

6    testimony by providing specific, clear, and convincing reasons supported by substantial

7    evidence. Finally, the ALJ did not err by concluding that Burridge's opinion supported the

8    ALJ's RFC calculation, without adopting that opinion word-for-word.

9         **A.    The ALJ provided specific and legitimate reasons supported by
10             substantial evidence for rejecting Dr. Perlstein's opinion.**

11        Dr. Perlstein provided four statements regarding Plaintiff's physical and mental

12   functional limitations, which the ALJ collectively gave little weight for several reasons.

13   (R. at 44–45.) First, the ALJ found that Dr. Perlstein's opinions were partly based on

14   Plaintiff's anxiety that had never been treated despite treatment recommendations. (*Id*. at

15   45.) Second, the ALJ found Dr. Perlstein was a pediatrician rather than a behavior expert.

16   (*Id*.) Third, the ALJ found there were gaps of several years between Plaintiff's visits with

17   Dr. Perlstein. (*Id*.) Finally, the ALJ found Plaintiff's activities of daily living (ADLs) are

18   inconsistent with Dr. Perlstein's opinions. (*Id*.)

19        When evaluating medical opinion evidence, "[t]he ALJ must consider all medical

20   opinion evidence," and there is a hierarchy among the sources of medical opinions.

21   *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008). Those who have treated a

22   claimant are treating physicians, those who examined but did not treat the claimant are

23

24   _____

25        [1] In a footnote spanning nearly an entire page, Plaintiff argues the ALJ erred by
     rejecting Plaintiff's request that a medical expert evaluate Plaintiff's case based on the
26   entire record. (Pl. Br. at 2–3, n. 1.) Plaintiff's footnote relies on *Howard ex rel. Wolff v.
     Barnhart*, 341 F.3d 1006, 1014 (9th Cir. 2003). However, Plaintiff's footnote largely
27   contains summaries of the relevant statutes and *Howard* without application to his case.
     (Pl. Br. at 2–3, n. 1.) Plaintiff does not elaborate on this argument in the body of his
28   Opening Brief or Reply. Accordingly, the Court finds this argument is waived, since the
     mention of an issue in a footnote without argument in support is insufficient to raise an
     issue on appeal. *Foti v. McHugh*, 247 F. App'x 899, 901 (9th Cir. 2007).

examining physicians, and those who neither examined nor treated the claimant are nonexamining physicians. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). If a treating physician's opinion is not given controlling weight, then the ALJ must consider the relevant factors listed in 20 C.F.R. § 404.1527(c)(1)–(6) and determine the appropriate weight to give the opinion. *Orn*, 495 F.3d at 632. If a treating physician's opinion is contradicted by another doctor's opinion, the ALJ cannot reject the treating physician's opinion unless he provides specific and legitimate reasons that are based on substantial evidence in the record." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).

Initially, the ALJ erred by rejecting Dr. Perlstein's opinions because he is not a behavior expert. (R. at 45.) Plaintiff is correct that the helpfulness of Dr. Perlstein's opinions depends on his superior vantage of Plaintiff's impairments, rather than his specialty. (Pl. Br. at 17.) Nevertheless, this error was harmless because the ALJ provided additional sufficient reasons for discounting Dr. Perlstein's opinions. *See Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006).

The ALJ appropriately rejected Dr. Perlstein's opinions based on Plaintiff's conservative treatment of his anxiety, Plaintiff's ADLs, and the large time-gap between Plaintiff's visits with Dr. Perlstein. First, substantial evidence supports the ALJ's conclusion that Dr. Perlstein's opinions were inconsistent with Plaintiff's conservative treatment of his anxiety symptoms. Though Plaintiff argues that Dr. Perlstein's opinions were primarily based on his autism and that he received other treatments aimed at improving functioning, substantial evidence still supports the ALJ's conclusion. (Pl. Br. at 18.) Dr. Perlstein repeatedly expressed that Plaintiff's anxiety contributes to his limitations. (R. at 2556, 2558, 2580–81, 2666.) Yet the medical records and Plaintiff's testimony confirm that he was not receiving treatment for his anxiety symptoms. (*Id*. at 74, 2424–25, 2557, 2581, 2666–68.) Thus, the ALJ's conclusion that Plaintiff sought only conservative treatment is supported by substantial evidence, and justifies the ALJ's discounting of Dr. Perlstein's opinions, since those opinions were based, in part, on Plaintiff's anxiety symptoms.

1       Next, the ALJ properly relied on Plaintiff's ADLs as a basis to discount Dr.

2   Perlstein's opinions. A claimant's ADLs are proper consideration for ALJ's evaluating

3   medical opinions. *See Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014). Here, the

4   ALJ cited several of Plaintiff's ADLs, including his doing well in school, driving

5   independently, and attending college. (R. at 45.) The ALJ's analysis is supported by

6   Plaintiff's other ADLs, including his doing chores his playing music in school marching

7   and concert bands, and his part-time work. (*Id.* at 64, 68, 70–71, 75–76, 1600, 1714, 1769,

8   2424.) Plaintiff argues the ALJ failed to account for significant limitations in Plaintiff's

9   performance of ADLs. (Pl. Br. at 15–17.) The Court disagrees. The ALJ included

10  significant limitations in Plaintiff's RFC based on Plaintiff's difficulties with ADLs. (R. at

11  43–44.)

12      Finally, the ALJ appropriately discounted Dr. Perlstein's opinions because of the

13  large time-gap in treatment. (*Id.* at 45.) This too was a permissible basis for discounting

14  Dr. Perlstein's opinions. *See* 20 C.F.R. § 416.927(c)(2)(i), (ii); *Benton v. Barnhart*, 331

15  F.3d 1030, 1038 (9th Cir. 2003). Here, the ALJ reasonably discounted Dr. Perlstein's

16  opinions since the record "shows that there were times he did not see [Plaintiff] for several

17  years." (R. at 45.) Plaintiff argues the ALJ erred since the frequency of examination is only

18  one factor that warrants consideration. (Pl. Br. at 17–18.) But the ALJ's opinion makes

19  clear that she considered other required factors. Accordingly, she did not err.

20      Substantial evidence supports the ALJ's discounting of Dr. Perlstein's opinions. The

21  ALJ relied on sufficient reasons—Plaintiff's conservative treatment, his ADLs, and gaps

22  in his treatment with Dr. Perlstein—to discount Dr. Perlstein's opinions. Further, each

23  reason was supported by substantial evidence.

24      . . . .

25      . . . .

26      . . . .

27  **B.    The ALJ provided specific, clear, and convincing reasons supported by
        substantial evidence for rejecting Plaintiff's symptom testimony.**

28
    The ALJ discounted Plaintiff's testimony for two primary reasons. First, the ALJ

found that Plaintiff's allegations of disabling symptoms were inconsistent with his conservative treatment for his impairments and symptoms. (R. at 44.) Second, the ALJ found that Plaintiff's allegations were undermined by his ADLs. (*Id.* at 42, 44, 46.) The Court concludes that each reason was sufficient and supported by substantial evidence. Thus, the ALJ did not err in discounting Plaintiff's symptom testimony.

An ALJ performs a two-step analysis to evaluate a claimant's testimony regarding pain and symptoms. *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014). First, the ALJ evaluates whether the claimant has presented objective medical evidence of an impairment "which could reasonably be expected to produce the pain or symptoms alleged." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035–36 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (*en banc*) (internal quotation marks omitted)). If the claimant presents such evidence then "the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Garrison*, 759 F.3d at 1014–15 (citing *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996)). This is the most demanding standard in Social Security cases. *Id.* at 1015. "In evaluating the credibility of pain testimony after a claimant produces objective medical evidence of an underlying impairment, an ALJ may not reject a claimant's subjective complaints based solely on a lack of medical evidence to fully corroborate the alleged severity of pain." *Burch v. Barnhart*, 400 F.3d 676, 682 (9th Cir. 2005).

As previously discussed, substantial evidence supports the ALJ's finding that Plaintiff's treatment was conservative, and that his allegations are inconsistent with his ADLs. Each reason is sufficient to discount a claimant's symptom testimony. *See Tommasetti*, 533 F.3d at 1039–40 (finding the claimant's "pain was not as all-disabling as he reported in light of the fact that he did not seek an aggressive treatment program and did not seek an alternative or more-tailored treatment program"); *see also Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) (reiterating that claimant's ADLs are a relevant consideration in evaluating symptom testimony). Each reason was also supported by substantial evidence. The ALJ found that there was a gap of several years between

treatments at the Center for Autism Research and Education. (R. at 44.) Similarly, the ALJ found that Plaintiff had not pursued counseling or taking medication despite recommendations from doctors. (*Id.*) Plaintiff argues the ALJ ignored the years of treatment that Plaintiff did undergo. (Pl. Br. at 21.) Plaintiff argues for a different interpretation of the evidence, but since the ALJ's interpretation was a reasonable one, the Court defers to it. *See Thomas*, 278 F.3d at 954. Further, Plaintiff miscomprehends case law criticizing reliance on conservative treatment in cases of mental impairment. (Pl. Br. at 21.) Plaintiff relies on *Garrison*, which criticizes punishing the mentally ill for occasionally going off medication where the record indicates the noncompliance was due to the mental illness. *Id.* at 1018 n. 24. Plaintiff does not argue Plaintiff's noncompliance was due to his impairment so his reliance on *Garrison* is misplaced.

Finally, the ALJ correctly relied on Plaintiff's ADLs in discounting Plaintiff's testimony. The ALJ cited ADLs including Plaintiff's preparing meals, driving, playing sports, playing music in band, and doing well in school. (R. at 42, 44, 46.) Though Plaintiff argues the ALJ failed to appreciate the limitations Plaintiff has despite his performance of ADLs, the Court disagrees. (Pl. Br. at 22.) ALJs may rely on a claimant's ADLs to the extent they undermine the claimant's testimony, even if the ADLs are not strictly consistent with fulltime work. *See Molina v. Astrue*, 674 F.3d 1104, 1113 (9th Cir. 2012) (holding that ALJs may rely on ADLs that undermine a claimant's testimony even if they reflect some limitations in functioning). Here, the ALJ's interpretation that Plaintiff's ADLs undermine his allegations is reasonable, even if the ADLs do not inherently reflect an ability to sustain fulltime work. Accordingly, the ALJ did not err in discounting Plaintiff's symptom testimony.

. . . .

. . . .

**C.     Substantial evidence supports the ALJ's evaluation of vocational evaluation specialist, Joseph Burridge.**

On October 15, 2016, Burridge evaluated Plaintiff "to assist in determining his

present level of function, while identifying vocational goals compatible to his impediment to employment." (R. at 2569.) Burridge found Plaintiff "posses[es] the learning potential to benefit from the employment provisions of a Vocational Rehabilitation program designed to obtain gainful employment." (*Id*. at 2574.) He also found "[v]ocational rehabilitation services should consider placing Mr. Johnson in a trial work plan or work adjustment training program." (*Id*.) He found that "[w]hen deemed viable direct placement or [o]n the job training commensurate with Mr. Johnson's transferable work skills, measured aptitudes, and interests may include, but are certainly not limited to entry level occupations in select work environments." (*Id*.) Finally, Burridge opined that "Mr. Johnson's capacity to perform work-related activities in gainful employment settings, from a physical or psychological point-of-view, will require the further insights of appropriate medical doctors or behavioral health professionals." (*Id*. at 2575.) The ALJ gave this opinion significant weight because it is consistent with the overall evidence. (*Id*. at 47.)

Plaintiff argues the ALJ's analysis of Burridge's opinion was erroneous. (Pl. Br. at 23–25.) Plaintiff essentially argues there is disharmony between the ALJ's acceptance of Burridge's opinion and Burridge's actual findings. (*Id*. at 24.) Plaintiff argues "[i]f the ALJ had in fact adopted Burridge's opinion, the ALJ would have found Johnson disabled." (*Id*.)

The Court rejects Plaintiff's argument and finds that substantial evidence supports the ALJ's evaluation of Burridge's opinion. Initially, it is the ALJ's duty to evaluate the medical evidence, resolve conflicts and ambiguities in the record and determine a claimant's RFC. *See Tommasetti*, 533 F.3d at 1041. The RFC need not match any particular medical source opinion since it is a legal determination. 20 C.F.R. §§ 404.1527(d)(2), 404.1545, 404.1546(c). Accordingly, the ALJ was not required to adopt Burridge's opinion word-for-word. Burridge himself acknowledged that he did not have the final word regarding Plaintiff's capacity to perform work-related activities. (R. at 2575.) The ALJ was required to evaluate Burridge's opinion while taking into account all other available evidence. From there, the ALJ had a duty to synthesize Plaintiff's RFC. The ALJ also had to take into account that Burridge's opinion was at a snapshot in time nearly one year before Plaintiff's

hearing before the ALJ and over one year before the date of the ALJ's decision. (*Id.* at 29.) Also, the ALJ adopted limitations consistent with Burridge's opinion and other evidence in Plaintiff's RFC. (R. at 43.) Ultimately, substantial evidence supports the ALJ's analysis of Burridge's opinion and her decision to give it significant weight, yet not adopt its recommendations word-for-word.

## IV.  CONCLUSION

Substantial evidence supports the ALJ's nondisability determination. The ALJ provided specific and legitimate reasons supported by substantial evidence for rejecting the opinions of Dr. Perlstein. The ALJ also provided specific, clear, and convincing reasons supported by substantial evidence for discounting Plaintiff's symptom testimony. Finally, the ALJ appropriately evaluated Joseph Burridge's opinion and incorporated it into Plaintiff's RFC.

**IT IS THEREFORE ORDERED** affirming the decision of the Administrative Law Judge (R. at 26–57) as upheld by the Appeals Council (R. at 1–7).

**IT IS FURTHER ORDERED** directing the Clerk of Court to enter judgment accordingly and close this matter.

Dated this 23rd day of March, 2021.

Honorable Susan M. Brnovich
United States District Judge